UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

Civil Action, File Number _____

| | | |
|---|---|---|
| SUSAN C. TURNER, | ) | |
|     Individually | ) | |
|     and | ) | |
| SUSAN C. TURNER, | ) | |
| Administratrix of the ESTATE | ) | |
| OF ROGER W. TURNER, JR. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | COMPLAINT |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
|     and | ) | |
| UNITED STATES COAST | ) | (ADMIRALTY) |
| GUARD | ) | |
|     Defendants. | ) | |

The Plaintiffs, complaining of the Defendants, allege:

## JURISDICTION, VENUE AND PARTIES

1. This action arises under and is brought pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 741-752 et. seq., the Public Vessels Act, 46 U.S.C. §781-790 et. seq. and General Maritime Law, 28 U.S.C. §1333. This is a case of admiralty and maritime jurisdiction.

2. The Plaintiff Susan C. Turner is a citizen and resident of the United States of America and of the County of Madison, State of Kentucky, and is the widow of Roger Wayne Turner, Jr.

3. The Plaintiff Susan Turner is the duly appointed Administratrix of the Estate of Roger Wayne Turner, Jr. by Order of the Clerk of Superior Court of Pasquotank County, North Carolina. The Estate of Roger W. Turner, Jr. is filed at the office of the Clerk of Court of Pasquotank County, in Elizabeth City, North Carolina.

4. Susan C. Turner brings this action on behalf of herself individually for personal injuries sustained as a result of the negligence described herein.

5.  Susan C. Turner, as Administratrix of the Estate of Roger W. Turner, Jr., brings this action for the wrongful death of Roger W. Turner, Jr., on behalf of the beneficiaries of Roger W. Turner, Jr., as a result of the negligence described herein.

6.  The acts complained of herein occurred upon navigable waters and involve activity which bears a significant relationship to traditional maritime activity.

7.  The vessel involved in this matter was a private watercraft, a twenty-foot-long Maycraft vessel. The vessel was owned by Roger W. Turner, Sr., a resident of Pasquotank County, North Carolina. The vessel was found (after the actions complained of herein), on the water at Carolina Shores subdivision on the Albemarle Sound (adjacent to the mouth of the Perquimans River) in Perquimans County, North Carolina.

8.  The Defendant United States of America is a sovereign and at all times material hereto, has acted through its agency, the United States Coast Guard, within the Department of Homeland Security.

## FACTUAL ALLEGATIONS

9.  On the evening of July 4, 2007, Susan C. Turner (hereinafter "Susan") and Roger W. Turner, Jr. (hereinafter "Roger") were boating aboard the private craft NO BITCHIN' (hereinafter "boat"), a twenty-foot long Maycraft vessel, travelling in a southeasterly direction down the Perquimans River within Perquimans County, towards the Albemarle Sound. Roger was operating the boat. Susan was in the bow of the boat.

10. As the boat was exiting the Perquimans River and entering the Albemarle Sound, the water was rough and waves were rocking and tossing the boat. At approximately 9:00 p.m. on July 4, 2007, as Susan attempted to walk from the bow of the boat towards the center console, she fell overboard.

11. Susan yelled and called out for help to Roger. Roger advised Susan to keep yelling.

12. Upon information and belief, Roger turned the boat to the left and circled back around to locate Susan and to rescue Susan.

13. Susan initially saw the boat and continued to call out for help to Roger, but the water was rough and the waves were rocking and tossing the boat. Susan thereafter lost sight of the boat.

14. Susan struggled to remain afloat in the water, swimming and treading water for hours. After a while, Susan located a crab pot buoy and used that buoy to assist her in remaining afloat. During the night, she located another crab pot buoy to assist her in staying afloat. During the night and into the early morning hours of July 5, 2007, Susan continued to struggle to remain afloat, to tread water and swim in the rough waters. She swam and clung to other crab pot buoys. She was also carried by the currents of the water.

15. The water remained rough from 9:00 p.m. July 4, 2007, throughout the night and into the day and evening on July 5, 2007.

16. In the early morning hours of July 5, 2007, Susan swam towards and was carried by the currents towards the shore in Perquimans County.

17. At approximately 9:20 a.m. on July 5, 2007, Susan came ashore at 208 Webb Street, Hertford, North Carolina (Perquimans County). Susan had been in the water for approximately twelve (12) to twelve (12 ½) hours.

18. The boat was found at approximately 9:00 a.m. on July 5, 2007 in the last cove off of Carolina Shore subdivision against the bulkhead (Perquimans County). The engine was in neutral and the key was turned off.

19. Upon information and belief at approximately 9:00 p.m. on July 4, 2007, when Susan fell overboard, Roger had turned the boat to the left, to circle back around to locate and rescue Susan.

20. Upon information and belief, after Susan fell overboard, Roger either fell off the boat due to the rough waters rocking and tossing the boat as he tried to rescue Susan, or Roger exited the boat in further efforts to rescue Susan.

21. Upon information and belief, Roger swam and treaded water throughout the night and into and through the day on July 5, 2007, searching for Susan, in his efforts to rescue Susan.

22. Upon information and belief, Roger remained alive swimming and afloat in the water searching for Susan throughout the night and into and through the next day, July 5, 2007.

23. Upon information and belief, Roger continued searching for Susan until he died, sometime before 6:15 a.m. on July 7, 2007.

24. Roger's body was discovered floating on July 7, 2007 at approximately 6:15 a.m. in the water on the shore at 525 Winslow Road, Hertford, North Carolina (Perquimans County). It was determined that Roger had died of asphyxiation by drowning.

25. Roger and Susan lived on Nixonton Loop, Elizabeth City, North Carolina on the Little River, next door to Roger's parents, Roger W. Turner, Sr. and Lois Turner.

26. When Roger and Susan did not return home to Nixonton Loop when expected on July 4, 2007, Roger W. Turner, Sr. ("Mr. Turner, Sr.") became worried. At approximately 12:00 a.m. (midnight) on July 5, 2007 Mr. Turner Sr. called 911 to notify 911 that Roger and Susan (and the boat) were overdue and missing. Mr. Turner Sr. expressed urgency that action be taken immediately to search for Roger and Susan.

27. Based on his prior discussions with his son Roger about his boating plans for that day, Mr. Turner Sr. reported to 911 that Roger and Susan would be returning to the Little River enroute from one of the following three areas: (1) the Pasquotank River; (2) the Perquimans River, or; (3) Mann's Harbor.

28. At approximately 12:30 a.m., Pasquotank Central Dispatch (911) notified the United States Coast Guard and the North Carolina Wildlife Resources Commission of the report from Roger W. Turner, Sr.

29. A representative of United States Coast Guard called Roger W. Turner Sr. by phone and gathered information directly from Mr. Turner Sr. Mr. Turner Sr. reported to the United States Coast Guard that Roger and Susan would be returning enroute to the Little River from one of the following areas: (1) the Pasquotank River; (2) the Perquimans River or (3) Mann's Harbor.

30. Mr. Turner Sr. expressed urgency to the United States Coast Guard to expedite search and rescue efforts for Roger and Susan.

31. Mr. Turner Sr. continued throughout the night and into the morning of July 5, 2007 to contact representatives of the Coast Guard and to talk with them on the phone, requesting the Coast Guard to send out Coast Guard personnel and resources to search for Roger and Susan.

32. The Coast Guard did undertake search and rescue efforts on July 5, 2007 to locate Roger and Susan by, <u>inter alia</u>,:

(a) Sending out a UMIBs (Urgent Marine Information Broadcasts) beginning at approximately 1:42 a.m. on July 5, 2007;

(b) Having a Jayhawk helicopter from the Elizabeth City Air Station fly the Pasquotank River enroute to the Elizabeth City Air Station, between approximately 1:46 a.m. and 2:15 a.m. on July 5, 2007, searching for Roger and Susan, and;

(c) Having a Jayhawk helicopter from the Elizabeth City Air Station fly the Pasquotank River at approximately 5:49 to 5:50 a.m. on July 5, 2007, searching for Roger and Susan.

33. The Jayhawk helicopter searches on the Pasquotank River found no results, though visibility was excellent.

34. A Coast Guard report as of 1:42 a.m. on July 5, 2007 establishes that the Coast Guard knew that Roger and Susan were enroute to Little River from either the Pasquotank or Perquimans River, or possibly Mann's Harbor.

35. Despite this knowledge, the Coast Guard did not send additional Coast Guard resources (helicopters, utility boats and/or personnel) to search the Perquimans River or the Mann's Harbor area.

36. A Coast Guard report at 1:46 a.m. on July 5, 2007, stated: "case pends" - - which is defined as an "open case" in which: "Further Action by the Coast Guard is necessary and planned." (United States Coast Guard Rescue Manual).

37. Despite having taken affirmative actions to undertake the search and rescue mission for Susan and Roger, and despite the Coast Guard's knowledge of specific areas to search, the Coast Guard did not act reasonably, diligently and expeditiously to send Coast Guard resources (helicopters, utility boats and/or personnel) to the Perquimans River or the Mann's Harbor area to search for Roger and Susan.

38. In addition, a dispatcher (Antonio W.) from the North Carolina Wildlife Resources Commission dispatch center in Raleigh, North Carolina, initiated a call to the United States Coast Guard at approximately 2:32 a.m. (upon information and belief) and discussed the missing boat (NO BITCHIN') and missing persons (Roger and Susan) with United States Coast Guard Supervisor Bouknight.

39. Supervisor Bouknight of the United States Coast Guard advised Antonio W. of the North Carolina Wildlife Resources Commission ("Wildlife") that the Coast Guard would call Wildlife if Coast Guard needed Wildlife. Coast Guard did not thereafter call Wildlife to request assistance.

40. As a result of Supervisor Bouknight's assurances to Antonio W. of Wildlife, Antonio W. did not notify the other North Carolina Wildlife personnel or Wildlife Officers in Perquimans or Pasquotank Counties or anywhere in eastern North Carolina that Susan and Roger Turner were missing and overdue.

41. As a result of Bouknight's representations to Antonio W. and Wildlife, North Carolina Wildlife did not send personnel or resources [boats, airplane(s), and/or North Carolina Wildlife Officers] to initiate, participate or assist in search and rescue efforts for Susan and Roger.

42. Bouknight's representations to Antonio W. and Wildlife, and Wildlife's reliance on those statements, worsened the position of Susan and Roger, by inducing Antonio W. and Wildlife to believe Coast Guard was performing reasonable and timely search and rescue efforts for Susan and Roger, and needed no assistance.

43. Wildlife had Wildlife Officers and boats available and on duty on July 4 and 5, 2007 in both Pasquotank and Perquimans Counties. Upon information and belief, those officers, boats and plane(s) would have been available immediately to perform search and rescue activities for Susan and Roger.

44. Between 12:30 a.m. and 9:30 a.m. on July 5, 2007, the Coast Guard never sent any resources (helicopters, utility boats and/or personnel) to search the Perquimans River or the Mann's Harbor area for Roger and Susan.

45. Between 12:30 a.m. and 9:30 a.m. on July 5, 2007, the United States Coast Guard never advised North Carolina Wildlife that it needed or required assistance in search and rescue efforts for Susan and Roger.

46. By the time the United States Coast Guard sent resources for search and rescue to the Perquimans River (helicopters, utility boats and personnel) after 9:30 a.m. on July 5, 2007, Susan had already been struggling in the water for over twelve (12) hours and Susan had already come ashore.

47. Upon information and belief, by the time the United States Coast Guard sent resources for search and rescue to the Perquimans River (helicopter, utility boats and personnel), after 9:30 a.m. on July 5, 2007, Roger had already been struggling in the water for over twelve (12) hours and longer. (Roger ultimately died of asphyxiation by drowning without being found by search and rescue efforts.)

48. On the morning of July 5, 2007, the Coast Guard had multiple air stations and coast guard facilities located up and down the coast of North Carolina, Virginia, and South Carolina (as well as up and down the eastern seaboard of the United States) that could have provided search and rescue resources (helicopters, utility boats and personnel) to assist in the rescue of Susan and Roger.

49. On the morning of July 5, 2007 beginning at approximately 12:30 a.m., the Coast Guard had many helicopters, utility boats, pilots and personnel available and "on call" and on "back up" or "standby" for search and rescue efforts.

50. The Coast Guard holds itself out to the public as expert in maritime search and rescue.

51. The United States Coast Guard represents on its website that it operates search and rescue efforts twenty-four (24) hours a day and is "Always Prepared."

52. The United States Coast Guard personnel, helicopters and utility boats are equipped with FLIR (Forward-Looking Infrared Systems), night goggles and other equipment which enhance visibility for night searches and rescues and which make night-time "search and rescue" efforts possible and effective.

53. Upon information and belief, it would take a Jayhawk helicopter from the United States Coast Guard air station in Elizabeth City only ten (10) minutes to fly to the site where Susan, Roger's body and the boat came ashore.

54. We submit that the United States Coast Guard was negligent in, inter alia:

(a) Failing to diligently and in a timely fashion, send "search and rescue" personnel, helicopters, and utility boats to search for Susan and Roger;

(b) Failing to diligently and in a timely fashion, send "search and rescue" personnel, helicopters and utility boats to search in the Perquimans River;

(c) Failing to follow Coast Guard "Search and Rescue" policies and procedures including but not limited to those set forth in the Coast Guard Manual;

(d) Failing to diligently and timely send "search and rescue" personnel, helicopters and utility boats from the Elizabeth City Air Station and other Coast Guard facilities and stations;

(e) Failing to have adequate number of helicopters and pilots on duty at that time;

(f) Failing to have adequate number of utility boats and boat pilots/personnel on duty at that time;

(g) Failure to diligently and timely call in "back up" Coast Guard crews to assist in "search and rescue";

(h) Failure to diligently and timely call in Auxiliary Coast Guard, North Carolina Wildlife Resources Commission (and its Wildlife Officers), and other governmental and civilian resources for assistance;

(i) Failure to exercise reasonable care which increased the risk of harm to Susan and Roger;

55. The negligence, carelessness, recklessness, willfulness and wantonness of the Defendants, through their personnel, acting within the course and scope of their duties consisted, <u>inter alia</u> of the failure to conform to the applicable standard of care in carrying out or failing to carry out its obligations and the obligations which it undertook to perform, failure of responsible personnel to have followed proper protocol, procedure, regulations and Coast Guard policy and "Search and Rescue Manual" procedures, and failing to exercise that degree of care which a reasonable prudent person would have exercised under the same or similar circumstances.

56. As a consequence of the negligence, carelessness, recklessness, willfulness and wantonness of the Defendants through Coast Guard personnel and as a direct and proximate result thereof, Roger W. Turner, Jr. was left in the waters of the Albemarle Sound for twelve (12) or more hours (upon information and belief), suffered much pain and suffering, and a fear of premature death, physical injuries and impact, permanent disability and permanent incapacitation, and met his untimely death by drowning, and he left surviving wife Susan C. Turner, who has lost the services, protection, care and assistance of a loving husband and has suffered deep wounded feelings and great grief and sorrow, the loss of her husband's society, companionship, comfort, guidance, kindly offices and advice, the income he would have provided and she has suffered pecuniary loss and has been otherwise damaged.

57. As a consequence of the negligence, carelessness, recklessness, willfulness and wantonness of the Defendants through Coast Guard personnel and as a direct and proximate result thereof, expenses were incurred for Roger W. Turner, Jr.'s recovery, transportation, and hospitalization and funeral expenses were thereafter incurred in Roger W. Turner, Jr.'s burial.

{00075584.DOC} 8
Case 2:09-cv-00037-BO Document 1 Filed 07/01/09 Page 8 of 10

58. As a consequent of the negligence, carelessness, recklessness, willfulness and wantonness of the Defendants through Coast Guard personnel and as a direct and proximate result thereof, Roger W. Turner, Jr. left surviving his adopted daughter Nicole White, who has lost the services, protection, care and assistance of a loving father and has suffered deep wounded feelings and great grief and sorrow, the loss of her father's society, companionship, comfort, guidance, kindly offices and advice, the income he would have provided and she has suffered pecuniary loss and has been otherwise damaged.

59. Also as a consequence of the negligence, carelessness, recklessness, willfulness and wantonness of the Defendants through Coast Guard personnel and as a direct and proximate result thereof, Susan C. Turner was left in the waters of the Albemarle Sound for over twelve (12) hours, where she suffered much pain and suffering, and a fear of premature death, physical injuries and impact, lost earnings capacity (now and into the future), permanent disability and permanent incapacitation. As a result she suffered a loss of earnings, medical expenses, and pecuniary loss, and she has suffered and continues to suffer from great mental anguish, and has been otherwise damaged.

60. Plaintiffs also hereby assert a claim of negligent infliction of emotional distress on behalf of Susan C. Turner, individually (based on Susan's experiences), and on behalf of the Estate of Roger W. Turner, Jr. (based on Roger's experiences). Both Susan and Roger experienced emotional injuries, physical impact and physical manifestations of injury, all as a result of Defendants' negligent conduct and omissions. In addition, both Susan and Roger were placed in immediate risk of physical harm by the Defendants' conduct and omissions. Under the "zone of danger" test, Susan and Roger suffered emotional injury as a result of sustaining a physical impact or contact that was more than exposure, stemming from Defendants' negligent, willful and wanton conduct and were physically harmed by that conduct. Susan and Roger were placed in the "zone of danger". This caused severe emotional distress to Susan and to Roger.

61. As a consequence of the foregoing, the United States, if a private person, would be liable to the Plaintiff herein.

The Plaintiff Susan C. Turner, individually and as Administratrix of the Estate of Roger W. Turner, Jr., demands judgment against the Defendants in such sums as will fully, fairly, and justly compensate Plaintiffs.

WHEREFORE, the Plaintiffs pray:

1. That Plaintiff Susan C. Turner have and recover of the Defendants compensatory and punitive damages in sums in excess of Ten Thousand Dollars ($10,000);

2. That Plaintiff Susan C. Turner, as Administratrix of the Estate of Roger C. Turner, Jr. have and recover of the Defendants compensatory and punitive damages for the wrongful death of Roger C. Turner, Jr. in sums in excess of Ten Thousand Dollars ($10,000);

3. That the Plaintiffs have such other and further relief as the Court deems just and proper.

This the 1st day of July, 2009.

/s/ Cynthia M. Currin
Attorney for Plaintiffs
Crisp, Page & Currin, L.L.P.
4010 Barrett Drive, Suite 205
Raleigh, NC 27609
Telephone: (919)791-0009
Fax: (919)791-0010
Email: ccurrin@cpclaw.com
State Bar No. 9184